ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE
INTRODUCTION
A jury convicted Defendant Boulding of two crack cocaine offenses in October of 2008. It found a conspiracy offense involving at least 50 grams of crack, and a possession with intent to distribute offense involving at least 5 grams of crack. The government had a Section 851 Notice on file reporting two prior felony drug offense convictions. At the time of Defendant Boulding's sentencing in April of 2009, this exposed him to a mandatory sentence of life in prison. He was 29 years old at the time.
The matter before the Court is Defendant Boulding's motion for modification or reduction in sentence under the new First Step Act. (ECF Nos. 284 & 294). The government argues that Defendant Boulding is ineligible for a reduced sentence because the PSR attributed over 650 grams of crack cocaine to him-well above the statutory threshold for mandatory life even under the higher thresholds of the Fair Sentencing Act of 2010, which are now available to Defendant Boulding under the First Step Act.
The Court appointed Counsel to assist Defendant Boulding with his First Step motion. Both sides have filed briefs. The Court finds that Defendant Boulding is eligible for relief under the First Step Act, but that he is not entitled to a plenary re-sentencing. Nor does the Court see any other need for a hearing on the fully briefed issues. The Court can and does exercise its discretion under the First Step Act to relieve Defendant Boulding of the mandatory life sentence, and to reduce Defendant Boulding's sentence to a term of years as provided in this Order.
FACTUAL AND PROCEDURAL BACKGROUND
1. Defendant Boulding's Conviction and Sentence
On October 3, 2008, a jury found Defendant Boulding guilty of conspiracy to distribute, and to possess with intent to distribute, 50 grams or more of cocaine base ("crack cocaine") (Count 1), and of possession with intent to distribute 5 grams or more of crack cocaine (Count 2). (ECF No. 122 ). The jury found that the quantity of crack cocaine involved in the conspiracy beyond a reasonable doubt was 50 grams or more of crack cocaine, the highest quantity determination the verdict form asked them to reach. (Id. ).
The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Boulding was responsible for 650.4 grams of crack cocaine.[1] The amount triggered an initial base offense level of 34. (PSR ¶ 91). The officer then added two levels for possession of a dangerous weapon (PSR ¶ 92); four levels for Defendant Boulding's role as an organizer in the offense (PSR ¶ 94); and a further two levels for obstruction of justice. (PSR ¶ 95). The resulting total offense level was 42. (PSR ¶ 100). The officer then scored Defendant's criminal history at six points, resulting in a criminal history category of *649 III. (PSR ¶ 111). The guideline range for a total offense level of 42 and criminal history category of III was 360 months to life, before consideration of any mandatory statutory terms. (PSR ¶ 169).
The statutory mandatory minimum ultimately controlled Defendant Boulding's sentence. Based on the government's Section 851 Notice, the PSR found that Defendant Boulding had two prior felony drug convictions. (PSR ¶ 6). Under the version of Section 841 in effect during Defendant Boulding's sentencing, a violation of 841(a) involving 50 grams or more of crack cocaine (Section 841(b)(1)(A)(iii)) was subject to a mandatory life sentence if the violation occurred after two or more prior convictions for a felony drug offense. Because the jury found Defendant Boulding responsible for 50 grams or more of crack cocaine, and because he had two prior felony drug convictions, his conviction for Count 1 required a mandatory life sentence. The mandatory statutory sentence also controlled Defendant Boulding's final guideline sentence under U.S.S.G. § 5G1.2. (PSR ¶ 169).
The Court sentenced Defendant Boulding to life imprisonment as to Count 1 on April 27, 2009, as required by statute. (ECF No. 162 ). As to Count 2, the Court varied downward from the guideline range of life, and imposed a concurrent sentence of 360 months imprisonment, the bottom end of what would have been the guideline range apart from Section 5G1.2. The Sixth Circuit Court of Appeals affirmed Defendant's conviction and sentence. United States v. Boulding , No. 09-1554, 2011 WL 635914 (6th Cir. Feb. 22, 2011).
The Court's variance on Count 2 was not the only record indication that the Court believed life in prison was too severe for this case. The Court said so directly during the sentencing hearing. The Court's opening comments made the point:
[I]n some senses with the congressional mandate of mandatory life in this situation, in some sense it's an easy sentencing hearing. There's not a lot of guideline issues to talk about.
On the other hand, in the more fundamental way, it's a very difficult sentencing hearing for me, because life in prison is not the sentence I would impose on Mr. Boulding if I had the full discretion that I normally have in sentencing. And so I'll say that at the outset. But, you know, that's where we are.
(ECF No. 171, PageID.958).
Later, in considering the Section 3553 factors, the Court again made it clear that life in prison was greater than necessary to achieve the purposes of sentencing:
I'll say, you know, for the record, we always look at the 18 U.S.C. 3553 factors. And I did that here too for two reasons.
One, up until, you know, 10 minutes before coming out here today, I still have been looking for ways to say, Is that mandatory minimum of life in prison really a mandatory minimum of life in prison?
* * *
I won't go through all of the avenues that I looked into, but I say it simply to indicate I'm not doing this lightly, and I'm not doing it willingly. In my view, in the Court's view, if I were to apply 3553 factors-deterrence, incapacitation, need for rehabilitation, a sentence that reflects the seriousness of the of the offense-I would certainly impose a significant custodial sentence. I would not impose a five-year sentence, but I would not impose life in prison on a 29-year-old man. I think that's too much. I think it is too much punishment. I don't even think at some level that it advances the deterrent interests because it's so overwhelming. How do you even take it in?
*650 I don't think it's necessary to incapacitate Mr. Boulding and protect the public for life. I think a lengthy custodial sentence followed by supervised release would do that.
(ECF No. 171, PageID.975-977).
2. The Fair Sentencing Act of 2010
Over a year after Defendant Boulding's conviction and sentence were entered, Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. United States v. Blewett , 746 F.3d 647, 649 (6th Cir. 2013) (en banc); see also Dorsey v. United States , 567 U.S. 260, 263-64, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2).
The changes made by the Fair Sentencing Act, however, were not retroactive. Blewett , 746 F.3d at 650.[2] Because Defendant Boulding had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.
3. The First Step Act of 2018
On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." United States v. Simmons , 375 F.Supp. 3d 379, 385, No. 07-CR-00874, 2019 WL 1760840, at *4 (E.D.N.Y. Apr. 22, 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:
SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
(a) DEFINITION OF COVERED OFFENSE.-In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 ( Public Law 111-220 ; 124 Stat. 2372), that was committed before August 3, 2010.
(b) DEFENDANTS PREVIOUSLY SENTENCED.-A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 ( Public Law 111-220 ; 124 Stat. 2372) were in effect at the time the covered offense was committed.
*651 (c) LIMITATIONS.-No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 ( Public Law 111-220 ; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.
First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat. 5194 (2018).
Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat. 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. Id. at § 404(c). No reduction is required.
DISCUSSION
The Court's Order setting a briefing schedule raised several questions for the parties to address. Those questions largely fell into two groups. In the first group, the Court asked how it should determine whether a defendant is eligible for a reduction under Section 404 of the First Step Act. In the second group the Court asked what process it should use to determine whether to reduce a sentence of an eligible defendant. The Court addresses those two overarching questions below, and then applies its conclusions to Defendant Boulding's case.
1. Determining Eligibility
The first question the Court posed is who may be eligible for a reduced sentence under the First Step Act. Both sides have framed their answers in terms of a defendant's actual offense conduct and the quantity of narcotics that are attributable to a defendant. They disagree only with respect to what information may be used to determine the quantities involved. In the Court's mind, both sides miss the mark because eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration regardless of actual quantities. The particular quantities affect only the Court's discretionary call on whether to grant a reduction in sentence.
The government argues that a defendant is eligible for consideration only if his actual offense conduct quantities fall below the statutory thresholds of the Fair Sentencing Act. (ECF No. 290, PageID.1738). The government suggests a two-fold inquiry for this determination. First, the reviewing court should determine from the entire record the quantity involved in the offense. Second, the court should treat the defendant as ineligible for relief if that quantity is above the statutory thresholds of the Fair Sentencing Act. (ECF No. 290, PageID.1740). The determination as to quantity, furthermore, may come from a specific finding of the sentencing court, from a plea agreement, from the defendant's Presentence Report, or from a trial record. (ECF No. 290, PageID,1740). If that quantity is sufficient to trigger the statutory penalty range that applied at the original sentencing, even under the higher thresholds of the Fair Sentencing Act, the defendant is not eligible for relief.
*652 The defense appears to accept this basic framework, but it contends that the materials from which a reviewing court may determine quantity for purposes of eligibility should be limited to admitted or jury-found facts, based on a line of cases stemming from the Supreme Court's decisions in Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Alleyne v. United States , 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). If the quantity admitted by the defendant or found by the jury is below the new statutory thresholds then the defendant is eligible for relief even if the PSR and the Court found-or could find-higher quantities based on the full record. The government objects that Apprendi and Alleyne have not been made retroactive on collateral review. The government also objects that this would give defendants such as Defendant Boulding a windfall because if the Fair Sentencing Act had been in effect at the time of charging and trial, the indictment would have alleged an amount sufficient to trigger the pertinent statutory penalties and the jury would have been able to so find.
The following hypothetical illustrates the parties' positions:
A defendant charged in an indictment under Section 841(b)(1)(A)(iii) is convicted by a jury of a crack cocaine offense and sentenced before the Fair Sentencing Act. The jury checked a box on the verdict form indicating the defendant was responsible for 50 grams or more of crack cocaine, the highest quantity they were asked to consider. The defendant's presentence report, however, determined that the total amount of crack cocaine attributable to the defendant was 300 hundred grams. The defendant did not object to that quantity during sentencing. According to the government, the defendant in this hypothetical is not eligible for relief under the First Step Act because the uncontested amount found in the hypothetical presentence report, 300 grams, is enough to trigger the statutory penalty range under Section 841(b)(1)(A)(iii) even after the Fair Sentencing Act. The defense, however, would say this defendant is eligible because the Court may only look at to quantity as charged and found by the jury, and 50 grams of crack cocaine no longer triggers Section 841(b)(1)(A)(iii)'s penalty ranges after the Fair Sentencing Act.
The Court concludes that the defendant in the hypothetical is eligible for consideration, but not for the reason the defendant argues here. For purposes of eligibility alone, quantity determinations are unnecessary. The statute rests eligibility on the nature of a defendant's prior conviction: specifically, whether it was a "covered offense." First Step Act § 404(b). A "covered offense" is one for which the Fair Sentencing Act modified the penalties, which includes any crack cocaine offense under Section 841(b)(1)(A) or (B). "Under the plain language of the Act, whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated. If that statute is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act, it is a 'covered offense.' " United States v. Davis , No. 07-CR-245S, 2019 WL 1054554, at *3 (W.D.N.Y. Mar. 6, 2019) (internal citations to Section 404 omitted). Quantity is simply not part of the statutory test for eligibility under the First Step Act. Eligibility turns entirely on the categorical nature of the prior conviction. All other issues, including the proper quantity determination, are a part of a reviewing court's discretionary call on whether to modify an eligible defendant's sentence.
2. Determining the Process
The next question is what process a reviewing court should use to determine *653 the extent of relief, if any, an eligible defendant should receive in the court's discretion. The defense argues for a plenary resentencing where, among other things, objections raised at the original sentencing could be renewed. The government counters that the First Step Act only directs a reviewing court, in its discretion, to examine a defendant's sentence as if sections 2 or 3 of the Fair Sentencing Act were in effect at the time of the defendant's sentence. The government proposes a process that is confined to a calculation of the thresholds and guidelines before and after the Fair Sentencing Act and then a reduction award within the new threshold and guidelines if the court wishes. The Court rejects both positions in part.
The process for determining whether an eligible defendant should receive a reduced sentence, and what any reduction should be, is not a plenary resentencing. The statute emphasizes that any reduction in sentence is in the reviewing court's discretion. If a court is not compelled to resentence an eligible defendant, it makes little sense for a court to be required to hold a plenary hearing if the court does decide to act. Furthermore, the statute only authorizes a "reduced sentence." First Step Act § 404(b). This limited authorization is inconsistent with a plenary resentencing. Rather it is consistent with the removal of a pre-existing barrier to the retroactive reach of the Fair Sentencing Act to defendants like Defendant Boulding who were sentenced before the effective date of that act.[3]
But unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions, and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it. Rather, Congress has directly authorized the possible reduction under 18 U.S.C. § 3582(c)(1)(B). Under that section a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Id. Because the First Step Act expressly permits courts to modify a term of imprisonment, the First Step Act serves as the basis for relief under Section 3582(c)(1)(B). See United States v. Kamber , No. 09-cr-40050, 2019 WL 399935, at *2 (S.D. Ill. Jan. 31, 2019) (applying Section 3582(c)(1)(B) to First Step Act motion but concluding the defendant was not entitled to relief because he was not convicted of a covered offense). The limits of 18 U.S.C. § 3582(c)(2) are inapplicable. The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds. The sentencing guidelines inform the Court's discretion to be sure. But they do not limit the Court's discretion as they did in earlier rounds under 18 U.S.C. § 3582(c)(2).
This means, among other things, that defendants who scored under guidelines as career offenders and were therefore ineligible for relief in earlier rounds now have an opportunity to obtain relief under the First Step Act even though their technical guideline range remains unaffected. The government's view would not permit this and would thereby preclude relief for a significant group of defendants that were thought to be beneficiaries of the First Step Act. See United States v. Tucker , 356 F.Supp.3d 808 (S.D. Iowa Jan. 23, 2019)
*654 (noting the First Step Act was enacted "in an effort to remedy the disproportionately harsh sentences imposed for crack cocaine offenses" and reducing sentence of career offender); Jon Schuppe, Kim Cornett and Michelle Cho, "I Refused to be Bitter or Angry": Matthew Charles, Released from Prison and Sent Back Again, Begins Life as a Free Man , NBCNEWS.COM , Jan. 8, 2019, https://www.nbcnews.com/news/us-news/i-refuse-be-bitter-or-angry-matthew-charles-released-prison-n955796 (noting the First Step Act applied to case of career offender garnering national attention).
3. Summary of the Court's Process
After a careful review of the parties' positions and the record evidence, both in this case and in similar motions from other defendants seeking relief under Section 404 of the First Step Act, the Court has crafted a process through which it will evaluate motions for a reduced sentence under Section 404. The Court describes that process below.
The Court's authority to impose a modified sentence under the First Step Act is rooted in 18 U.S.C. § 3582(c)(1)(B). The Court, either upon motion or on its own review, first determines whether a Defendant is eligible for a modified sentence as permitted by Section 404 of the First Step Act. A defendant is eligible for a reduced sentence if the defendant was convicted of a "covered offense" before the effective date of the Fair Sentencing Act and does not implicate any of the limitations in Section 404(c). This is a categorial decision based on the type of prior conviction, not any particular quantity determination. The Court then determines whether to exercise its discretion to reduce the defendant's sentence. This determination is informed by a guideline comparison between the guidelines as they existed during the original sentencing and the guidelines as they exist today, as well as from any other information the parties present or the Court chooses to consider. Based on this information, the Court will then determine the extent of any reduction it decides in its discretion to award, consistent with statutory limits, non-binding guideline considerations, and the Section 3553 factors.
This process provides a neutral and categorical approach to eligibility that ensures all potentially worthy defendants receive the Congressionally provided relief under both the Fair Sentencing Act and the First Step Act. It also ensures protection against unwarranted windfalls by leaving the Court with discretion to deny relief completely, or to tailor relief to fit the facts of the case.
4. The First Step Act Applied to Defendant Boulding.
A. Eligibility
Defendant Boulding is eligible for consideration of a reduced sentence under the First Step Act. His offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii) ; and those penalties were "modified by section 2 ... of the Fair Sentencing Act of 2010[.]" The categorical limitations in Section 404(c) also do not apply to Defendant Boulding. His sentence was not "previously imposed or previously reduced in accordance" with the Fair Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).
B. Amended Guideline Range
The Court begins with a guidelines comparison. The table below demonstrates the differences between the offense level calculation *655 as it existed when Defendant Boulding was originally sentenced in 2008 and the guidelines as they exist now, taking into account all intervening guideline amendments.[4]
Counts 1 § 2 (grouped Original Guidelines Current Guidelines together per § 3D1.2(d)) Base Offense Level Level 34 (§ 2D1.1(c)(3)) Level 30 (§ 2D1.1(c)(5)) 650.4 grams of cocaine base At least 500 G but less than At least 280 G but less than 1.5 KG of Cocaine Base 840 G of Cocaine Base Specific Offense Characteristic +2 levels (§ 2D1.1(b)(1)) +2 levels (§ 2D1.1(b)(1)) Possession of a Dangerous Weapon Adjustments for Role in + 4 levels (§ 3B1.1(a)) + 4 levels (§ 3B1.1(a)) Offense Organizer or Leader of Criminal Activity Adjustments for Obstruction of +2 levels (§ 3C1.1) +2 levels (§ 3C1.1) Justice Total Offense Level Level 42 Level 38 Criminal History Category III Category III Guideline Range Before 360 months to life 292 months to 365 months Consideration of Statutory Provisions Guideline Range After Life (§ 5G1.2) 292 months to 365 months Consideration of Statutory Provisions
As the above chart demonstrates, Defendant Boulding's guideline range calculation is reduced from life to a term of 292 months to 365 months. This is because, first of all, his base offense level has been reduced four levels under intervening guideline amendments. But in addition, it is because § 5G1.2 of the guidelines is no longer implicated. Previously that section mandated a guideline sentence of life because the version of Section 841(b)(1)(A)(iii) in effect at the time of Defendant Boulding's sentence required it under the factual basis supporting the convictions. Applying the Fair Sentencing Act retroactively to the factual basis that supported the earlier convictions means that section no longer controls Defendant Boulding's sentence.[5] Rather the factual basis for the Count 1 conviction based on *656 the charges, the jury's finding, and the prior Section 851 convictions in Count 1 would only trigger the ten-year minimum and life term maximum in Section 841(b)(1)(B)(iii). To be sure, the actual offense conduct quantities determined for sentencing may involve higher quantities-even quantities high enough under the new thresholds. But the actual offense conduct quantities only inform the Court's discretion on whether to reduce an eligible defendant's sentence; they do not substitute for a required element of the factual basis for the offense of conviction whether established by jury verdict or guilty plea.[6]
This difference between the quantity used to support the factual basis of conviction, and the quantity determination for sentencing guidelines is a familiar and established part of federal practice. As part of a plea agreement, for example, a defendant may admit to, and the government may accept at plea colloquy, a quantity sufficient to trigger the minimum penalties of Section 841(b)(1)(B), even though both sides know the actual quantities for the sentencing guidelines would be high enough to trigger Section 841(b)(1)(A) thresholds. In that familiar scenario, it is not the province of the Court at sentencing to escalate the offense of conviction to Section 841(b)(1)(A) simply because the PSR quantities would support it. Rather, the Court accepts the factual basis of the conviction for what it supports, and leaves other considerations for sentencing. By the same token here, when looking back and considering the sentencing array "as if" the Fair Sentencing Act thresholds were in effect, the Court must be constrained for determining the new basis of conviction by what the defendant admitted, or the jury found, as the factual basis for the original conviction, and not by what the PSR later determined as relevant conduct for sentencing guidelines. Here, on an "as if" basis, that means Defendant Boulding's Count 1 conviction must be limited to the penalty ranges of Section 841(b)(1)(B) (10 years to life), and his Count 2 conviction by the penalty ranges of Section 841(b)(1)(C) (0 to 30 years).
C. Sentence Reduction
After its review of the record, including Defendant Boulding's post-sentencing behavior, the Court elects to exercise its discretion to reduce Defendant Boulding's sentence to a term of years. In evaluating the extent of the reduction, the Court considers the guideline analysis as well as the factors set for in § 3553(a). The Court is satisfied the amended guideline range of 292-365 months incorporates the relief that the First Step Act provides, while still reflecting the severity of Defendant Boulding's conduct, including the predicate offenses. The Court therefore determines to reduce Defendant Boulding's sentence to 324 months imprisonment on both Counts 1 and 2, to be served concurrently. All other terms of the original sentence remain unchanged.
This sentence reflects the significant custodial sentence that the Court stated it *657 would still have applied at the original sentencing, given the 3553 factors. As the Court at that time noted, Defendant Boulding was not engaged in a simple or light distribution scheme. Indeed, the drug conspiracy was significant, and Defendant Boulding had a leadership role in that conspiracy. Firearms were also involved. Defendant Boulding is further responsible for a substantial amount of crack cocaine for his part in the conspiracy as the Court found at sentencing. The trial record also included testimony from multiple people whose lives were hurt by the activity that Defendant Boulding led.
But as the Court stated then, and reiterates now, a sentence of life imprisonment is too much punishment. It is overwhelming on the facts of this case, and indeed undermines some of the Section 3553 factors. The First Step Act now permits the Court to impose a reduced sentence that, in the Court's mind, is the more consistent outcome after a consideration of all the 3553 factors.
CONCLUSION
ACCORDINGLY, IT IS ORDERED that Defendant Boulding's pro se motions for modification or reduction of sentence under the First Step Act (ECF No. 284 & 294 ) are GRANTED to the extent detailed in this Opinion and Order.
IT IS FURTHER ORDERED that Defendant Boulding's term of imprisonment is REDUCED to 324 months as to each of Counts 1 and 2, to be served concurrently.
IT IS FURTHER ORDERED that all other terms of the original sentence remain unchanged.
ORDER
In accordance with the Opinion and Order entered this day granting Defendant Boulding's motion for a reduced sentence under the First Step Act of 2018:
Defendant Boulding's term of imprisonment is REDUCED to 324 months as to each of Counts 1 and 2, to be served concurrently. All other terms and conditions of this Court's judgment remain the same.
IT IS SO ORDERED .

Defendant Boulding disputed this, but the Court overruled the objection.

In Dorsey v. United States, 567 U.S. 260, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Boulding was sentenced before August 3, 2010, Dorsey did not provide him with a pathway to any relief.

Because this is not a plenary resentencing, the Court is not required to hold a hearing where the defendant is present. See Fed. R. Crim. P. 43(b)(4).

The government states that when a defendant qualifies for a reduction under the First Step Act, it will not object to further consideration under Section 3582(c)(2) of motions to reduce a sentence under the retroactive guideline amendments. (ECF No. 290, PageID.1745-1756). From a judicial efficiency standpoint, the Court's analysis uses these amendments without requiring a separate motion. The guideline range is not a constraint, in any event.

A similar analysis applies to Mr. Boulding's charge in Count 2. A crack cocaine conviction involving a factual basis of 5 grams of crack would no longer trigger Section 841(b)(1)(B) penalties. Rather, under the Fair Sentencing Act, only the penalties of Section 841(b)(1)(C) would be available. With the prior Section 851 convictions, this would be a range of 0 - 30 years imprisonment.

The defense invocation of Apprendi and Alleyne has genuine bite here. Under the First Step Act, for any eligible defendant, the Court may choose to impose a reduced sentence "as if" the new thresholds of the Fair Sentencing Act were in effect at the time of the original sentence. If those new thresholds had been in effect for Defendant Boulding, they would only have permitted a Count 1 conviction under Section 841(b)(1)(B)(iii) because quantity is an essential element of the (A)(iii) or (B)(iii) offense. The only quantity found beyond a reasonable doubt, or otherwise offered to support the factual basis for conviction, was "50 grams or more" of crack. Alleyne and Apprendi have not been extended retroactively on collateral review. But that is different than saying they have no significance in making the "as if" sentencing decision called for under the First Step Act.